IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RICKEY DALE NEWMAN                                              PETITIONER

v.                        CASE NO. 05-2107

LARRY NORRIS, Director,
Arkansas Department of Correction                               RESPONDENT

## **MEMORANDUM OPINION AND ORDER**

Petitioner was convicted of capital murder by a jury in Crawford County, Arkansas in 2002. Petitioner now seeks habeas relief on 15 separate grounds. Before the Court are Petitioner's Petition for Writ of Habeas Corpus (Doc. 13) and Respondent's Response (Doc. 20). Petitioner claims that his custody and pending sentence of death violate the rights accorded to him as a United States citizen under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. He requests that this Court (1) order his unconditional release, (2) order retrial by the State of Arkansas, or (3) order resentencing by the State of Arkansas. As reflected below, the Court finds that the Petition presents both exhausted and unexhausted claims for relief. Furthermore, the Court finds that the Petition presents exceptional circumstances that warrant dismissal of only the unexhausted claims and a stay of the remaining exhausted claims. Because a stay is an extraordinary measure, the Court finds that the stay can only be predicated upon (1) the condition that Petitioner seek prompt relief on the unexhausted claims from the State of Arkansas *and* (2) the condition that, once relief has been exhausted

in State court, he promptly return to this Court and request that the stay be lifted as to the remaining exhausted claims.

## I. FACTUAL BACKGROUND

The facts of this case were set out in detail in a previously reported decision, *Newman v. Arkansas*, 106 S.W.3d 438 (Ark. 2003). No defense was lodged on Petitioner's behalf; thus, the theory of the prosecution was the only set of facts heard by the jury. The State presented the theory that Petitioner went to a liquor store with Marie Cholette (the decedent) to obtain alcohol. The State theorized that Petitioner only intended to get the decedent drunk and have sex, then things went awry. After sex became a non-event, Petitioner became so enraged that he murdered the decedent and the rage continued after her death which caused him to mutilate the body. The medical examiner testified that the decedent's body was mutilated to a greater degree than he had seen in his ten years as the medical examiner in Arkansas. The decedent suffered a deep slicing wound around her neck, her nipples had been cut off (one post-mortem), she suffered stab wounds to the left lung, she was sliced open from her sternum down to her pelvic bone where her intestines were protruding and half of her liver had been cut out, part of her vagina had been removed while she was alive, and she sustained injuries to the anal area. *Id.* at 446.

## II. PROCEDURAL HISTORY

Petitioner was charged with capital murder in the Circuit Court of Crawford County, Arkansas for the violent murder. After a capital

murder trial that began and ended on June 10, 2002, Petitioner was convicted and sentenced to death.

Following the verdict, Petitioner attempted to waive his direct appeal, but this was denied by the Arkansas Supreme Court. Petitioner then attempted to have the mandatory direct appeal dismissed while it was pending, and this was likewise denied on January 30, 2003 (Counsel was appointed and a 7-page brief filed). On May 22, 2003, the Arkansas Supreme Court affirmed the verdict and death sentence.

On July 30, 2003, Petitioner requested to waive the appointment of post-conviction counsel and to abandon all post-conviction remedies. He further requested that an execution date be set as soon as possible. Crawford County Circuit Court found that Petitioner had entered a valid waiver of his rights to counsel and to seek post-conviction relief. However, the Arkansas Supreme Court reversed this order as it appeared that Petitioner could have been on psychotropic medication during the time he requested the waivers. The case was remanded to the circuit court and a mental health evaluation ordered.

After receiving a report from Dr. Charles Mallory, a psychologist with the Arkansas State Hospital, the Crawford County Circuit Court again accepted Petitioner's waivers and found him competent to waive his rights. On April 15, 2004, the Arkansas Supreme Court affirmed the competency finding.

On September 20, 2004, federal public defenders filed a motion in Crawford County Circuit Court requesting forensic DNA testing. On

February 3, 2005, the Crawford County Circuit Court held an Inquiry Hearing as to legal representation of Petitioner and concluded that the federal public defenders, Bruce Eddy and Julie Brain, had not been appointed to represent Petitioner.  Therefore, the court terminated Eddy and Brain from further representation of Petitioner and dismissed all pending motions (specifically the request for DNA testing) filed on behalf of Petitioner.  The federal public defenders then filed a reconsideration motion regarding the request for forensic DNA testing and a request to proceed through Next-Friend Betty Moore.  These were denied on May 2, 2005.

In the Arkansas Supreme Court, on September 21, 2004, the federal public defenders filed a Motion to Recall the Mandate and For a Stay of Execution.  The Arkansas Supreme Court issued a stay and set a briefing schedule to assist with the decision to recall the mandate. Petitioner then requested the Arkansas Supreme Court to vacate its briefing schedule to allow him to proceed with his post-conviction appeal in Crawford County Circuit Court.  The Arkansas Supreme Court granted the request to vacate the briefing schedule on December 9, 2004.  On June 2, 2005, the Arkansas Supreme Court granted a *pro se* motion to dissolve Petitioner's stay of execution.  On September 8, 2005, the Arkansas Supreme Court declared the Motion to Recall the Mandate to be moot.

**III. DISCUSSION**

Before a federal court will review the merits of a petitioner's

4

habeas claims, the petitioner must normally exhaust available state judicial remedies. *Picard v. Conner*, 404 U.S. 270, 275 (1971). State courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). The exhaustion doctrine has been codified in the federal habeas statute. 28 U.S.C. § 2254(b)(1). The requirement of exhaustion of remedies is satisfied if the petitioner has "fairly presented" his claims to the state court, thus preserving those claims for federal review, by properly raising both the factual and legal bases of the claim in state court proceedings, affording that court "a fair opportunity to rule on the factual and theoretical substance of [the] claim." *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir. 1995). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)(citations omitted).

However, "[t]he question of exhaustion 'refers only to remedies still available at the time of the federal petition;' it requires federal courts to ask whether an applicant for federal relief could still get the relief he seeks in the state system." *O'Sullivan v. Boerckel*, 526 U.S. 838, 851 (1999) (Stevens, J., dissenting (quoting

5

*Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982)); *see O'Sullivan*, 526 U.S. at 848 (Court's opinion) (agreeing with the dissent's description of the law of exhaustion). "In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability," including a petitioner's failure "to comply with the deadline for seeking state-court review or for taking an appeal." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (citing *O'Sullivan*, 526 U.S. at 845); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

### A. Mixed Petition

The United States Supreme Court has recognized that a petitioner risks losing the right to federal habeas review by application of the statute of limitations when a mixed petition is dismissed due to unexhausted claims. *Rhines v. Weber*, 544 U.S. 269 (2005). The petition before us is a mixed petition, as it contains both exhausted and unexhausted claims.

#### 1. Petitioner's Exhausted Claims

During the mandatory direct review, the Arkansas Supreme Court reviewed several claims identical to or closely related to Petitioner's current federal habeas claims. Specifically, Petitioner has raised the following claims:

> (a) That the prosecutor committed misconduct during his closing argument to the jury at the conclusion of the guilt phase by expressing his personal opinion that Petitioner killed the victim as a sex crime (Claim 4, Section 3, Sub-Section A);

>    (b) That the first statement given to law enforcement on February 15, 2001, violated his constitutional rights as Petitioner lacked the capacity to knowingly and intelligently waive his *Miranda* rights (Claim 5, Section 2, Sub-Section A);
>
>    (c) That allowing Petitioner to appear before the jury in jail clothing and physical restraints violated his constitutional rights (Claim 6); and
>
>    (d) That the admission of testimony regarding his prior assault charge and other prior crimes was irrelevant and prejudicial, in violation of his constitutional rights (Claim 11, Section 1).

These claims have met the exhaustion requirements. Petitioner also claims that the Court should conduct a cumulative review (Claim 15). We find exhaustion inapplicable to this claim.

### 2. Petitioner's Unexhausted Claims

Petitioner has not presented the following claims to the Arkansas courts:

>    (a) That he is actually innocent of the crime (Claim 1);
>
>    (b) That trial counsel rendered constitutionally ineffective assistance at the guilt phase (Claim 2);
>
>    (c) That trial counsel rendered constitutionally ineffective assistance at the penalty phase (Claim 3);
>
>    (d) That his constitutional rights to a fair trial were violated by the State's failure to disclose material exculpatory information, presentation of and failure to correct testimony it knew to be false, and other prosecutorial misconduct (Claim 4, except for Sub-Section A of Section 3);
>
>    (e) That admitting into evidence Petitioner's statements illegally obtained violated his constitutional rights (Claim 5, except Sub-Section A of Section 2);
>
>    (f) That Petitioner's rights to a trial by a fair and impartial jury were violated in multiple respects (Claim

7

7);

(g) That Petitioner is ineligible for a sentence of death as the State failed to prove beyond a reasonable doubt the aggravating circumstance that he had previously committed a violent felony (Claim 9)[1];

(h) That permitting the jury to rehear a portion of Petitioner's trial testimony during its deliberations violated Petitioner's constitutional rights (Claim 10)[2];

(i) That the admission of irrelevant and highly prejudicial evidence of other crimes and bad character violated Petitioner's constitutional rights (Claim 11, except Section 1);

(j) That errors and omissions by appellate counsel deprived Petitioner of his constitutional right to effective assistance on appeal (Claim 12);

(k) That Petitioner's capital trial was conducted before state judicial officers dependent upon popularly-contested elections (Claim 13); and

(l) That the sentencing provisions of Arkansas's capital murder statutes violate the constitution (Claim 14).

Claim 8, that Petitioner was tried while mentally incompetent in violation of his constitutional rights, was considered and ruled upon by the Arkansas courts.  However, because new evidence has been presented regarding the adequacy of the opinion of the only expert to testify regarding Petitioner's competency to stand trial, this issue can no longer be considered exhausted.  Therefore, we find Claim 8 is unexhausted.

---

[1] This claim was considered and ruled upon by the Arkansas Supreme Court.  However, the claim was only evaluated in regards to state law.

[2] *Supra* note 1.

8

### 3. New Evidence Not Considered by State Courts

The statute of limitations had run by the time Petitioner filed his habeas petition in this Court. Petitioner moved to equitably toll the time between the running of the statute and the filing of the petition. In that regard, evidentiary hearings were held on the issue of equitable tolling of the statute of limitations, ultimately finding that equitable tolling was warranted in an order dated January 24, 2008 (Doc. 78).

During the evidentiary hearings on the issue of equitable tolling on November 8, 2007 and November 27, 2007, we examined the question of whether Petitioner was afforded a full and fair competency hearing at the time he waived post-conviction proceedings. During these hearings, new evidence was presented that the sole witness at Petitioner's state competency hearings, Dr. Charles Mallory, a forensic psychologist employed by the Department of Human Services, Arkansas State Hospital, incorrectly graded the test he administered to Petitioner (resulting in a higher intelligence quotient score), used improper tests to determine Petitioner's competency, and improperly administered Petitioner's tests. The Order issued January 24, 2008 describes this evidence(Doc. 78).

Petitioner has also presented additional evidence not considered by the Arkansas courts regarding the reasonableness of Petitioner's legal decisions at the time of his trial and appeals, as well as evidence not considered by the state courts regarding Petitioner's

AO72A
(Rev. 8/82)

actual innocence claim.  (Docs. 84, 89).

**B.   Comity Requires the Exhaustion of the Unexhausted Claims**.

Comity requires that Petitioner exhaust his unexhausted claims so that State courts have a fair opportunity to address Petitioner's claims in light of the above new evidence.  Furthermore, there is additional evidence that has not been considered by State courts, and the State courts should have the opportunity to review this evidence in light of Petitioner's claims.

The Arkansas Supreme Court has addressed the issue of newly discovered evidence of incompetency at trial and declined to issue a writ of *error coram nobis*. *See Echols v. Arkansas*, 201 S.W.3d 890 (2005).  Hover, that case did not involve newly discovered evidence regarding errors committed by the testifying expert, who gave an opinion that Petitioner was competent.

Although the entirety of Petitioner's unexhausted claims do not deal directly with the new evidence regarding Petitioner's competency, we nevertheless find that the State should have the opportunity to address all of the unexhausted claims, as well as the previously exhausted competency claim in light of the above-discussed new evidence.  We believe that the State courts are in the best position to weigh the proffered new evidence and decide whether they will now consider it and review Petitioner's unexhausted claims.

**C. Petitioner has Good Cause for Failing to Exhaust**

At this point, the statute of limitations has run.  If the

**AO72A
(Rev. 8/82)**

Petition is now dismissed, Petitioner would be unable to re-file it in federal court after exhausting the unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 271 (2005). To alleviate the hardship that comity and the statute of limitations places on petitioners with mixed petitions, the United States Supreme Court has recognized the availability of staying the exhausted claims and holding the unexhausted claims in abeyance. *Id.* at 276-77. However, district courts are not without limitation in their ability to use the stay and abeyance procedure. District courts can only employ the procedure if there is good cause for a petitioner's failure to exhaust his claims, the unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 277-78. Additionally, the district court "should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278.

   Petitioner has shown that he was mentally impaired at the time he waived all waivable appeals to the state courts and waived his right to appellate counsel. We find that Petitioner's mental impairment and questionable competence at the time he should have filed his state appeals is an exceptional circumstance that constitutes good cause for his failure to exhaust his claims. His unexhausted claims involve evidence never before considered by state courts and are potentially meritorious. Furthermore, we find that there is no indication that Petitioner has engaged in intentionally

11

dilatory litigation tactics.

**IV. CONCLUSION**

For the sake of comity, and before we can decide Petitioner's claims, Arkansas courts must be permitted to review the newly discovered evidence regarding Dr. Mallory's testimony that Petitioner was competent, as well as the additional new evidence proffered by Petitioner.

This Court finds this case presents exceptional circumstance as contemplated by the Eighth Circuit. Therefore, the proper disposition of this mixed petition is to (1) dismiss the unexhausted claims so that the State may properly have the first opportunity to rule on claims effected by the newly discovered evidence; (2) hold all other exhausted claims in abeyance; and (3) predicate the stay upon the twin conditions that Petitioner promptly seek relief from the State and then promptly return to this Court (if necessary) to diligently prosecute his petition here.

Therefore, we order that (1) the unexhausted claims should be and hereby are **DISMISSED** and that (2) the remainder of the claims should be and hereby are **STAYED** on two conditions: (a) that Petitioner affirmatively seek relief on his unexhausted claims with the State of Arkansas within thirty days of the date of this Order, and (b) that Petitioner act within thirty days of the full exhaustion of the dismissed claims at the State level to seek to have the stay lifted by this Court on the remaining claims.

12

AO72A
(Rev. 8/82)

IT IS SO ORDERED this 3rd day of February 2009.

        /S/ Robert T. Dawson
Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)